1   regular disseminations of press releases on the national circuits of major newswire

2   services and through other wide-ranging public disclosures, such as

3   communications with the financial press and other similar reporting services; and

4           (d)   Beckman was followed by numerous securities analysts

5   employed by major brokerage firms who wrote reports which were distributed to

6   the sales force and customers of their respective brokerage firms. Those reports

7   were publicly available and entered the public marketplace.

8       168. As a result of the foregoing, the market for Beckman's securities

9   promptly digested current information regarding Beckman from all publicly

10   available sources and reflected such information in Beckman's stock price. Under

11   these circumstances, all purchasers of Beckman's securities during the Class

12   Period suffered similar injury through their purchase of Beckman's securities at

13   artificially inflated prices, which fell as the truth concerning the wide-spread

14   quality control problems, including problems with the troponin test kits, became

15   known, and a presumption of reliance applies.

16                    **LOSS CAUSATION/ECONOMIC LOSS**

17       169. During the Class Period, as detailed herein, Defendants made material

18   misrepresentations and omissions and engaged in a scheme to deceive the market

19   and a course of conduct that artificially inflated the price of Beckman's securities

20   and operated as a fraud or deceit on Class Period purchasers of Beckman's

21   securities by misrepresenting the Company's operations, products, and prospects.

22   As a result, Plaintiff and other members of the Class purchased Beckman securities

23   at artificially inflated prices. When the Company's prior misrepresentations,

24   omissions and other fraudulent conduct were revealed through a series of partial

25   corrective disclosures, the price of Beckman securities fell significantly on several

26   occasions (as detailed below), as portions of the artificial inflation were removed

27   from the Company's stock price. As a result of their purchases or acquisitions of

28

1  Beckman securities during the Class Period, Plaintiff and the other members of the
2  Class therefore suffered economic loss.

3      **1.      Disclosure Of Beckman's Unauthorized Changes To The AccuTnI**
4            **Troponin Test Kit Without FDA Approval**

5      170.  After the market closed on March 22, 2010, Beckman filed a Form 8-
6  K disclosing that the FDA had informed Beckman that certain modifications to the
7  AccuTnI troponin test kits as used on the DxI Systems and the Access Systems
8  were made without FDA approval. On March 23, 2010, Beckman participated in a
9  Barclays Capital Global Conference (the "Barclays Conference") wherein
10 Defendant Slacik discussed the impact of this announcement on Beckman's ability
11 to sell troponin test kits on the DxI Systems and market the troponin test kits on the
12 Access Systems.

13     171.  When the market opened on March 23, 2010, Beckman's stock
14 opened down $3.10 from the closing price on March 22, 2010, or 4.5%, at $66.00
15 per share.   When the market closed on March 23, 2010, after the Beckman's
16 comments at the Barclays Conference, Beckman's stock dropped an additional
17 $1.78 to close at $64.22 per share on high volume, down over 7% or $4.88 per
18 share from the close on March 22, 2010.

19     **2.      Disclosure Of Beckman's Recall Of The AccuTnI Test Kits On**
20           **The DxI Systems**

21     172.  On April 12, 2010, Beckman filed a Form 8-K announcing a recall of
22 the troponin test kits from use on the DxI Systems as of May 31, 2010.
23 Immediately following this disclosure, Beckman's stock dropped $0.91 per share,
24 or 1.5 %, to $61.13 on high volume.

25     **3.      Disclosure Of Troponin Problems Stretching Into 2011**
26     173.  On May 14, 2010, Beckman filed a Form 8-K announcing that, based
27 on information provided by and discussions with the FDA, Beckman expected to
28 submit its 510(k) submissions for the troponin test kits on the DxI Systems and

1   Access Systems in the first half of 2011. Immediately following this disclosure,
2   Beckman's stock dropped $2.24 per share, or 3.7%, to $58.85.

3   **4.   Full Disclosure of Beckman's Troponin And Other Quality,**
4   **Safety, And Compliance Problems, The Resources Needed To Fix**
5   **Them, And Downward Revision Of Earnings Guidance For Fiscal**
6   **2010**

7   174.   On July 22, 2010, after the market closed, Beckman reported its
8   second quarter 2010 earnings results, alerting the investing public that long-
9   standing quality and compliance problems in fact existed and reducing its full year
10  outlook from between $4.30 to $4.50 per share to $3.90 to $4.00 per share.
11  Immediately following this news, Beckman's stock dropped $12.64 per share, or
12  21%, to close at $47.26 on July 23, 2010 on high volume of over 8 million shares.

13  <u>**NO SAFE HARBOR**</u>

14  175.   Beckman's verbal "Safe Harbor" warnings accompanying its oral
15  forward-looking statements ("FLS") issued during the Class Period were
16  ineffective to shield those statements from liability.

17  176.   Defendants are also liable for any false or misleading FLS pleaded
18  because, at the time each FLS was made, the speaker knew the FLS was false or
19  misleading and the FLS was authorized and/or approved by an executive officer of
20  Beckman who knew that the FLS was false. None of the historic or present tense
21  statements made by Defendants were assumptions underlying or relating to any
22  plan, projection or statement of future economic performance, as they were not
23  stated to be such assumptions underlying or relating to any projection or statement
24  of future economic performance when made, nor were any of the projections or
25  forecasts made by Defendants expressly related to or stated to be dependent on
26  those historic or present tense statements when made.

27
28

## FIRST CAUSE OF ACTION

### (For Violation of §10(b) of the 1934 Act and Rule 10b-5

### Against All Defendants)

177.   Plaintiff incorporates ¶¶1-176 by reference.

178.   During the Class Period, Defendants carried out a common plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Beckman securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

179.   Defendants (i) employed devices, schemes and artifices to defraud; (ii) made untrue statements of material facts and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Beckman's securities in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5. All Defendants are liable either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

180.   Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Beckman's financial well-being, business and prospects, as specified herein.

181.   These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure

1   investors of Beckman's financial condition and performance and continued

2   substantial growth, which included the making of, or the participation in the

3   making of, untrue statements of material facts and omitting to state material facts

4   necessary in order to make the statements made about Beckman and its business

5   operations and future prospects in light of the circumstances under which they

6   were made, not misleading, as alleged more particularly herein, and engaged in

7   transactions, practices and a course of business which operated as a fraud and

8   deceit upon the purchasers of Beckman securities during the Class Period.

9       182.   Each of the Individual Defendants' primary liability, and controlling

10   person liability, arises from the following facts: (i) the Individual Defendants were

11   high-level executives and/or directors at the Company during the Class Period and

12   members of the Company's management team or had control thereof; (ii) each of

13   these Defendants, by virtue of his responsibilities and activities as a senior officer

14   and/or director of the Company was privy to and participated in the creation,

15   development and reporting of the Company's internal budgets, plans, projections

16   and/or reports; (iii) each of these Defendants enjoyed significant personal contact

17   and familiarity with the other Defendants and was advised of, and had access to,

18   other members of the Company's management team, internal reports and other

19   data and information about the Company's finances, operations, and sales at all

20   relevant times; and (iv) each of these Defendants was aware of the Company's

21   dissemination of information to the investing public which they knew or recklessly

22   disregarded was materially false and misleading.

23       183.   The Defendants had actual knowledge of the misrepresentations and

24   omissions of material facts set forth herein, or acted with reckless disregard for the

25   truth in that they failed to ascertain and to disclose such facts, even though such

26   facts were available to them. Such Defendants' material misrepresentations and/or

27   omissions were done knowingly or recklessly and for the purpose and effect of

28   concealing Beckman' s financial well-being, business relationships, and prospects

1 from the investing public and supporting the artificially inflated price of its
2 securities. As demonstrated by Defendants' overstatements and misstatements of
3 the Company's business prospects throughout the Class Period, Defendants, if they
4 did not have actual knowledge of the misrepresentations and omissions alleged,
5 were reckless in failing to obtain such knowledge by deliberately refraining from
6 taking those steps necessary to discover whether those statements were false or
7 misleading.

8    184.   As a result of the dissemination of the materially false and misleading
9 information and failure to disclose material facts, as set forth above, the market
10 price of Beckman's securities was artificially inflated during the Class Period. In
11 ignorance of the fact that market prices of Beckman's securities were artificially
12 inflated, and relying, directly or indirectly, on the false and misleading statements
13 made by Defendants, or upon the integrity of the market in which Beckman's
14 securities trade, and/or in the absence of material adverse information that was
15 known to or recklessly disregarded by Defendants, but not disclosed in  public
16 statements by Defendants during the Class Period, Plaintiff and the other members
17 of the Class acquired Beckman securities during the Class Period at  artificially
18 high prices and were damaged thereby.

19    185.   At the time of said misrepresentations and omissions, Plaintiff and the
20 other members of the Class were ignorant of their falsity, and believed them to be
21 true. Had Plaintiff and the other members of the Class and the marketplace known
22 the truth regarding the problems that Beckman was experiencing, which were not
23 disclosed by Defendants, Plaintiff and the other members of the Class would not
24 have purchased or otherwise acquired their Beckman securities, or, if they had
25 acquired such securities during the Class Period, they would not have done so at
26 the artificially inflated prices which they paid.

27    186.   By virtue of the foregoing, Defendants have violated Section 10(b) of
28 the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

187. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CAUSE OF ACTION

### (For Violation of §20(a) of the 1934 Act

### Against All Defendants)

188. Plaintiff incorporates ¶¶1-187 by reference.

189. The Individual Defendants were controlling persons of Beckman within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or to shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

190. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

191. As set forth above, Beckman and the Individual Defendants each violated Section 10 (b) and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20 (a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment on behalf of itself an 12 the Class, as follows::

(a)    Determining that this action is a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:      February 7, 2011

MOTLEY RICE LLP

By: _____

Mark Labaton (Bar No. 159555)
MOTLEY RICE LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California  90024
Telephone: (310) 500-3488
Facsimile: (310) 824-2870
Email: mlabaton@motleyrice.com

*Liaison Counsel for the Class*

Christopher J. Keller
(admitted *pro hac vice*)
Christopher J. McDonald
(admitted *pro hac vice*)
LABATON SUCHAROW LLP
140 Broadway
New York, New York  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477
Email: cmcdonald@labaton.com

Sherrie R. Savett (admitted *pro hac vice*)
Barbara A. Podell
(admitted *pro hac vice*)
Douglas M. Risen
(admitted *pro hac vice*)
Eric Lechtzin (Bar No. 248958)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 875-3071
Facsimile: (215) 875-5715
Email: ssavett@bm.net

*Co-Lead Counsel for Lead Plaintiff and the Class*

## CERTIFICATION

I, Michael J. Ruggieri, as Administrator of the Iron Workers District Council of New England Pension Fund ("IWDCNE Pension Fund"), hereby certify as follows:

      1.    I am fully authorized to enter into and execute this Certification on behalf of the IWDCNE Pension Fund. I have reviewed a complaint filed against Beckman Coulter, Inc. ("Beckman") alleging violations of the federal securities laws;

      2.    IWDCNE Pension Fund did not purchase securities of Beckman at the direction of counsel or in order to participate in any private action under the federal securities laws;

      3.    IWDCNE Pension Fund is willing to serve as a lead plaintiff in this matter, including providing testimony at deposition and trial, if necessary;

      4.    IWDCNE Pension Fund's transactions in Beckman during the class period are reflected in Exhibit A, are attached hereto;

      5.    IWDCNE Pension Fund has not sought to serve as a lead plaintiff in any class action under the federal securities laws during the last three years;

      6.    Beyond its pro rata share of any recovery, IWDCNE Pension Fund will not accept payment for serving as a lead plaintiff on behalf of the class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this ____ day of September, 2010.

10/7/2010

Michael J. Ruggieri
Administrator of Iron Workers District Council of
New England Pension Fund

# EXHIBIT A

## TRANSACTIONS IN
## BECKMAN COULTER, INC.

| Transaction Type | Trade Date | Shares | Price Per Share | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 05/07/10 | 200.00 | $60.07 | ($12,013.00) |
| Purchase | 05/07/10 | 2,700.00 | $60.17 | ($162,468.72) |
| Purchase | 05/10/10 | 800.00 | $61.03 | ($48,822.56) |
| Purchase | 05/14/10 | 500.00 | $58.75 | ($29,372.70) |
| Purchase | 05/14/10 | 1,200.00 | $58.87 | ($70,640.88) |
| Purchase | 05/19/10 | 800.00 | $57.96 | ($46,364.72) |
| Purchase | 05/20/10 | 300.00 | $56.67 | ($16,999.86) |
| Purchase | 05/25/10 | 1,000.00 | $55.94 | ($55,936.60) |
| Purchase | 05/26/10 | 200.00 | $56.98 | ($11,396.20) |

## BECKMAN COULTER, INC. (NYSE: BEC)
## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS

I, Richard S. Hoffmann, as General Counsel for and on behalf of the Steelworkers Pension Trust ("Steelworkers" or "Plaintiff"), duly swear and say as to the claims asserted under the federal securities laws, that:

1.      I have reviewed a complaint filed against Beckman Coulter, Inc. and certain of its officers and/or directors, and the analysis of the case provided by Berger & Montague, P.C., and I hereby authorize Steelworkers' selected counsel, Berger & Montague P.C., to file a complaint and/or a Lead Plaintiff Petition on behalf of Steelworkers.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff's transactions in the common stock of Beckman Coulter, Inc. during the July 31, 2009 through July 22, 2010 Class Period are as follows:

*See* Schedule A attached.

5.      Plaintiff has sought to serve as a representative party on behalf of a class under the United States federal securities laws in the following cases filed during the three (3) year period preceding the date on which this certification is signed:

*In re IMAX Corporation Sec. Litig.*, Civil Action No. 06-cv-06128-NRB (S.D.N.Y. 2006)

*Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc., et al.*, Civil Action No. 07-cv-81038-CIV-Hurley/Hopkins (S.D. Fla. 2007)

*In re VeriFone Holdings, Inc. Sec. Litig.*, Civil Action No. 07-cv-06140 (N.D. Cal. 2007)

*Genesee County Employees' Retirement System v. Merck & Co., Inc, et. al.*, Civil Action No. 08-cv-02177 (D. N.J. 2008)

6.      Plaintiff has been appointed/served as lead plaintiff in the following securities class actions during the three (3) year period preceding the date on which this certification is signed:

*In re Boston Scientific Sec. Litig.*, Civil Action No. 10-cv-10593-PBS (D. Mass. 2010)

*In re Veeco Instruments Inc. Sec. Litig.*, Civil Action No. 05-md-01695-CM (S.D.N.Y. 2005) (settled 2007)

(The Post-Retirement Health Insurance Plan for the staff of Steelworkers Pension Trust is currently serving as a lead plaintiff in *In re Excelsior, Federated and Scudder Mutual Funds Investment Litigation*, Civil Action No. 04-md-15861-CCB (D. Md. 2004)) (settlement approved in October 2010).

7.    Plaintiff has not accepted and will not accept any payment for serving as a representative party on behalf of the class beyond its *pro rata* share of any recovery, except for any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered by the court.

8.    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 1st day of Nov., 2010 at TREVOSE , PA .

By: _Richard S. Hoffmann_
Richard S. Hoffmann
General Counsel
Steelworkers Pension Trust

ka1609011

2

## SCHEDULE A

### STEELWORKERS PENSION TRUST'S CLASS PERIOD TRANSACTIONS IN BECKMAN COULTER, INC. (NYSE: BEC)

| Transaction Type | Trade Date | No. Shares Bought | Price Per Share |
|---|---|---|---|
| Purchase | 05/07/10 | 3,500 | $60.1736 |
| Purchase | 05/07/10 | 300 | $60.0650 |
| Purchase | 05/10/10 | 1,000 | $61.0282 |
| Purchase | 05/14/10 | 600 | $58.7454 |
| Purchase | 05/14/10 | 1,600 | $58.8674 |
| Purchase | 05/19/10 | 1,100 | $57.9559 |
| Purchase | 05/20/10 | 500 | $56.6662 |
| Purchase | 05/25/10 | 1,300 | $55.9366 |
| Purchase | 05/26/10 | 200 | $56.9810 |

### POST CLASS PERIOD TRANSACTIONS

| Transaction Type | Trade Date | No. Shares Sold | Price Per Share |
|---|---|---|---|
| Sale | 09/22/10 | 2,300 | $46.9379 |

kal609012

## CERTIFICATION

I, George Hopkins, as Executive Director of Arkansas Teacher Retirement System, hereby certify as follows:

1.    I am fully authorized to enter into and execute this Certification on behalf of the Arkansas Teacher Retirement System ("Arkansas Teacher"). I have reviewed the Complaint filed against Beckman Coulter, Inc. ("Beckman") alleging violations of the federal securities laws;

2.    Arkansas Teacher did not purchase securities of Beckman at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.    Arkansas Teacher is willing to serve as a lead plaintiff in this matter, including providing testimony at deposition and trial, if necessary;

4.    Arkansas Teacher's transactions in Beckman during the class period are reflected in Exhibit A, attached hereto;

5.    Arkansas Teacher sought to serve as a lead plaintiff in the following class actions under the federal securities laws during the last three years:

*In re Ambac Financial Group, Inc. Securities Litigation*, No. 1:08-cv-00411-NRB (S.D.N.Y.)

*In re Schering-Plough Corp./Enhance Securities Litigation*, No. 2:08-cv-00397-DMC-MF (D.N.J.)

*In re Colonial Bancgroup, Inc. Securities Litigation*, No. 2:09-cv-00104-MHT-WC (M.D. Ala.)

*In re MGM Mirage Securities Litigation*, No. 2:09-cv-01558-RCJ-LRL (D. Nev.)

*Plichta v. Sunpower Corporation et al*, No. 3:09-cv-05473-RS (N.D. Cal.)

*City of Monroe Employees' Retirement System v. The Hartford Financial Services Group, Inc. et al*, No. 1:10-cv-02835-NRB (S.D.N.Y.)

*Richman v. Goldman Sachs Group, Inc. et al*, No. 1:10-cv-03461-PAC (S.D.N.Y.)

*Rochester Laborers Pension Fund v. Monsanto Company et al*, No. 4:10-cv-01380-CDP (E.D. Mo.)

*Jimmy Elias Karam v. Corinthian Colleges, Inc. et al*, No. 2:10-cv-06523-GHK –RC (C.D. Cal.)

6.    Beyond its pro rata share of any recovery, Arkansas Teacher will not accept payment for serving as a lead plaintiff on behalf of the class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this 1st day of November, 2010.

_George Hopkins_
_Executive Director of Arkansas Teacher Retirement System_

**EXHIBIT A**

**TRANSACTIONS IN
BECKMAN COULTER, INC.**

| Transaction Type | Trade Date | Shares | Price Per Share | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 09/18/09 | 3,200.00 | $69.44 | ($222,209.92) |
| Purchase | 09/18/09 | 1,000.00 | $69.50 | ($69,503.80) |
| Purchase | 09/23/09 | 900.00 | $69.75 | ($62,770.50) |
| Purchase | 09/23/09 | 800.00 | $69.75 | ($55,800.00) |
| Purchase | 09/24/09 | 700.00 | $68.48 | ($47,932.57) |
| Purchase | 10/09/09 | 1,300.00 | $67.46 | ($87,696.31) |
| Purchase | 02/17/10 | 1,900.00 | $66.14 | ($125,661.63) |
| Purchase | 02/26/10 | 1,400.00 | $65.80 | ($92,115.94) |
| Purchase | 03/01/10 | 2,300.00 | $67.24 | ($154,659.82) |
| Purchase | 03/02/10 | 3,400.00 | $68.32 | ($232,285.62) |